IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA

| | |
|---|---|
| Arthur Sheridan, an individual, and Barbara Sheridan, an individual, individually and on behalf of all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>IHEARTMEDIA, INC., a Delaware corporation<br><br>Defendant. | CIVIL ACTION NUMBER<br><br>1:15-CV-160<br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiffs, Arthur Sheridan and Barbara Sheridan ("Plaintiffs" or "the Sheridans"), individually and on behalf of all those similarly situated, complain of Defendant iHeartMedia, Inc. ("Defendant" or "iHeartMedia"), as follows:

## INTRODUCTION[1]

1. This is a class action by the Sheridans, the owners of numerous master recordings of songs recorded before February 15, 1972 ("pre-1972 recordings"), against iHeartMedia.

2. iHeartMedia operates an internet radio service ("iHeartRadio") that streams music and other programming to its subscribers via the internet, which is listened to on computers, smart phones and other internet-connected devices.

---

[1] Throughout this complaint, the terms "internet radio" and "internet radio service" include internet-based radio stations, including customizable radio stations, and online streaming of traditional AM/FM radio broadcasts. This case, however, does not involve terrestrial broadcast of AM/FM radio broadcasts and these terms do not include such broadcasts.

3. iHeartMedia must pay royalties for the use of sound recordings created *on or after* February 15, 1972, which are copyrighted under the Copyright Act of 1976 (the Copyright Act" or the "Act"). The Act does not, however, extend federal copyright to sound recordings created before February 15, 1972 (*i.e.,* pre-1972 recordings), but specifically provides that states remain free to create remedies for unauthorized use of those pre-1972 recordings.

4. Since the master recordings of these pre-1972 recordings are not subject to protection by the Federal Copyright Act, they are governed exclusively by state law. Georgia Code §16-8-60 confers the sole right to transfer the sounds of the master recordings of the Sheridans' pre 1972 recordings with them.

5. The Sheridans believe, based upon their investigation, that iHeartMedia regularly streams[2] one or more of their pre-1972 recordings (listed below) to Georgia listeners/customers.

6. iHeartMedia, however, never obtained authorization to stream/transfer these pre-1972 recordings from the Sheridans or the class as required by Georgia law. In other words, iHeartMedia causes the transfer of these pre-1972 recordings without the consent of the person who actually owns the master phonograph record and pays no compensation or royalties.

7. There are literally thousands of such recordings, and iHeartMedia is transferring and streaming them daily to its Georgia listeners and has been doing so for years.

8. The Sheridans seek to represent the owners of all the pre-1972 recordings in this action as class representatives for damages incurred by iHeartMedia's failure to pay and

---

[2] Streaming means: "playing continuously as data is sent to a computer [or other device] over the Internet." http://www.merriam-webster.com/dictionary/streaming (last accessed on September 28, 2015).

compensate them for the unauthorized transfer of such recordings in Georgia, in violation of §16-8-60, and to enjoin iHeartMedia's further violations of this statute.

## PARTIES, JURISDICTION AND VENUE

9. Plaintiff Arthur Sheridan is a citizen of Illinois.

10. Plaintiff Barbara Sheridan is a citizen of Illinois.

11. Defendant iHeartMedia, Inc. is a Delaware corporation with its principal place of business in Texas.

12. This Court has jurisdiction of this case pursuant to 28 U.S.C. §1332(d)(2) as there is diversity of citizenship and it is a class action demanding more than $5 million in damages exclusive of interest and costs.

13. The Court has specific jurisdiction over iHeartMedia due to its mass-solicitation of Georgia customers through its interactive website iHeartRadio.com and its ongoing violation of the Georgia RICO law as detailed below.

14. Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2) because iHeartMedia's violations of Georgia law injuring Plaintiffs occurred in Georgia and in this district.

## iHEARTMEDIA'S MUSIC STREAMING SERVICE

15. Operating under the name iHeartRadio, iHeartMedia offers internet radio services in the form of customizable music "stations" that stream music to users on the internet. iHeartMedia also owns hundreds of traditional ("terrestrial," or AM and FM) radio stations and streams their broadcasts online. iHeartMedia offers its internet radio services to the public on a non-subscription basis.[3] Users can access iHeartMedia's internet radio services on a variety of internet platforms including computers, digital media devices, tablets, video game consoles, and smartphones.

---

[3] As noted above, the terrestrial broadcast of the AM/FM radio is not part of this lawsuit.

16. Users of iHeartMedia's customizable stations hear advertisements at periodic intervals between tracks, and may skip only a certain amount of tracks in a certain period of time. Skipping a track often results in hearing an advertisement.

17. Streaming music (or other programming) over the internet entails the transfer of a series of digital "packets" to the temporary random access memory of the listener's computer or other internet-connected device.

18. iHeartMedia has no license, authority, or consent from the Sheridans to transfer the sounds of the recordings from its copies of their masters under Georgia law.  So each time iHeartMedia does so to Georgia listeners, it violates the Georgia RICO law, as detailed below.

## iHEARTMEDIA REGULARLY TRANFERS PRE-1972 RECORDINGS OF PLAINTIFFS WITHOUT THEIR CONSENT

### A.  The Sheridans' Master Recordings:

19. In the 1950s and 1960s, Arthur Sheridan owned and operated several recording companies specializing in recording and selling doo-wop, jazz, and rhythm and blues music. These music labels produced recordings by some of the most influential musicians of the era, including the Flamingos (inducted to the Rock and Roll Hall of Fame in 2001), Little Walter (inducted to the Blues Hall of Fame in 1986 and the Rock and Roll Hall of Fame in 2008), and the Moonglows (inducted to the Vocal Group Hall of Fame in 1999 and the Rock and Roll Hall of Fame in 2000).

20. Arthur Sheridan owns many pre-1972 master recordings, including but not limited to the following fixtures of jazz, blues, and doo-wop music: "Slow Down Woman", "The Mojo", "I Want my Baby", and "How Can I Leave" by J.B. Lenoir; "That's my Dear" and "You

Ain't Ready" by The Flamingos; "Evening Sun" by Johnny Shines; "Love is a Pain", "No Need of Your Crying", "I Had a Feeling", and "Meet Me Baby" by Rudy Greene; "Nervous Wreck" and "No More Love" by Willie Nix; "Lonely Christmas", "Whistle My Love", "Baby Please", and "Hey Santa Claus" by The Moonglows; "She's Gonna Ruin Me" and "I Can't Stand Being Away From You" by T-Bone Walker; "Just Keep Loving Her" by Little Walter; "Merry Lee", "Down Home", "Sweet and Lovely", and "Talk of the Town" by Howard McGhee; and "High and Lonesome" and "Roll and Rhumba" by Jimmy Reed.

21. Barbara Sheridan owns the pre-1972 master sound recording of "Golden Teardrops" by The Flamingos, critically acclaimed when it was recorded and still regarded as a classic.

22. The Sheridans own the intellectual property and contract rights associated with the recordings.

B. **The Federal Copyright Act Requires Payment of Royalties to Owners of Master Recordings but Leaves Pre-1972 Recordings to State Law**

23. The Copyright Act creates a federal statutory licensing scheme pursuant to which internet radio companies, such as iHeartMedia, are required to pay royalties for the public performance of sound recordings protected by the Act. *See* 17 U.S.C. §§112(e), 14(d)(2), 114(f). The companies pay these royalties to SoundExchange, a nonprofit entity established by regulation for the collection and distribution of royalty payments under this scheme.

24. However, the licensing does not extend to Pre-1972 Recordings. Thus, SoundExchange's authority does not extend to the collection and distribution of royalty payments to the owners of copyrights in pre-1972 recordings. *See* 17 U.S.C. § 114(g)(2) (requiring SoundExchange to distribute royalties to holders of federal copyrights). Therefore,

iHeartMedia's possible royalty payment to SoundExchange as required by Federal Copyright law does not have any bearing on the Sheridans' claims for the non-payment asserted here. SoundExchange has no authority to negotiate or collect payments/royalties on behalf of master phonograph owners for the reproduction and transfer of pre-1972 recordings.

25. Additionally, the Copyright Act exempts pre-1972 recordings from its coverage. 17 U.S.C. §301(c). But nothing in the Copyright Act permits entities such as iHeartMedia to make use of pre-1972 recordings without compensation or authorization. Indeed, the Copyright Act specifically left states free to regulate the use of works of authorship that it chose not to render subject to federal law. 17 U.S.C. §301(b)(1). As detailed herein, Georgia has done so.

## COUNT ONE: VIOLATION OF GEORGIA RICO

26. Plaintiffs incorporate the above allegations as though fully set forth below.

27. Georgia Code §16-8-60 vests with Plaintiffs the exclusive rights to transfer their master pre-1972 recordings. This section, states in pertinent part:

> (a) It is unlawful for any person, firm, partnership, corporation, or association knowingly to: (1) Transfer or cause to be transferred any sounds or visual images recorded on a phonograph record, disc, wire, tape, videotape, film, or other article on which sounds or visual images are recorded onto any other phonograph record, disc, wire, tape, videotape, film, or article without the consent of the person who owns the master phonograph record, master disc, master tape, master videotape, master film, or other device or article from which the sounds or visual images are derived;[4]

---

[4] Georgia Code §16-8-60(c)(1) exempts radio broadcast. Streaming is not a "broadcast transmission." 17 U.S.C. §114(j)(3).

28. As described above, iHeartMedia has violated this law each time it streams and digitally transfers a pre-1972 song to its listeners' computers without permission from the Sheridans.

29. iHeartMedia has repeatedly violated this statute by streaming these pre-1972 recordings to its Georgia listeners/customers. The Sheridan's believe their songs are streamed to Georgia listeners of iHeartMedia every day.

30. Georgia Code §16-8-60 is made "racketeering activity" under Georgia Code §16-14-1 *et seq.* ("Georgia RICO"), and specifically under §16-14-3(5)(A)(xiv).

31. By repeatedly violating §16-8-60, iHeartMedia has committed a "pattern of racketeering" under Georgia RICO §16-14-3, and has therefore violated §16-14-4(a), which states:

> It shall be unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money.

32. Plaintiffs believe these violations have repeatedly occurred for the past four years and continue to occur going forward.

33. As a result of iHeartMedia's pattern of violating §16-8-60, it has acquired and maintained an interest in personal property, including money, that rightfully belongs to the Sheridans and class members.

34. iHeartMedia's unauthorized transfer of these pre-1972 recordings has deprived the Sheridans of the market value or royalties iHeartMedia should have paid them for permission to use and transfer their master recordings.

35. Defendant's pattern of racketeering is a direct and proximate cause of the Sheridans' injuries, which are unpaid compensation for the right to transfer these master recordings.

If iHeartMedia had complied with the law, it would have had to pay the Sheridans the fair market value for this right and/or royalties.

36. Pursuant to Georgia Code §16-14-6(c), the Sheridans demand judgment in three times the amount of damages they have sustained or three times the amount of fair market compensation that they should have been paid.  They also seek punitive damages, attorney's fees, and costs (including investigation costs) under §16-14-6(c), as well as demanding a jury trial.

37. iHeartMedia's violations are ongoing, every day, and will not stop without judicial intervention.  Thus, Mr. and Mrs. Sheridan also seek a preliminary and permanent injunction, pursuant to §16-14-6(a), against iHeartMedia from further violations of their rights by ordering it to stop streaming their recordings to Georgia listeners (which results in the unauthorized transfer of the pre-1972 recordings).

38. Plaintiffs also seek divesture of any profits iHeartMedia has obtained based on its violations described herein, pursuant to §16-14-6(a).

## CLASS ACTION ALLEGATIONS

39. The Sheridans bring this action on behalf of themselves and as representatives of a class of those whose pre-1972 recordings have been unlawfully transferred by iHeartMedia.

40. The class is defined as:  All owners of sound recordings of musical performances that were fixed/recorded before February 15, 1972 and were streamed, distributed, or reproduced without consent, or were otherwise unlawfully transferred without consent, in Georgia.

41. The Sheridans do not know the number of class members but believe they are too numerous to join in one action and that they are ascertainable from iHeartMedia's records.

42. The Sheridans' claims are typical of the class and the Sheridans' interests are not adverse to theirs. Common questions of law and fact exist as to each class member's claims. They include: (a) whether iHeartMedia distributed, transferred, or reproduced each class member's pre-1972 master recordings without consent; (b) whether this violates Georgia law as detailed above; (c) whether the class members have been damaged; and (d) whether an injunction can provide relief to all class members and is an appropriate remedy.

43. A class action is superior to a plethora of individual actions by each class member because of the time and expense of litigation in proportion to the amounts of each class member's damages. Individual actions would also result in varying or inconsistent rulings by different courts.

44. The Sheridans are adequate class representatives. Their counsel are experienced in class actions.

45. Accordingly, Plaintiffs seek the certification of this case as a class action pursuant to Fed. R. Civ. P. 23(b)(2), for injunctive relief, and (b)(3) for money damages.

## **PRAYER FOR RELIEF**

46. WHEREFORE, Plaintiffs pray for judgment against defendant as follows:

    a. Plaintiffs demand the case be certified as a class action with them as class representatives and their lawyers as class counsel;

    b. That judgment be entered for Plaintiffs and the class for three times the amount of damages sustained by Plaintiffs or three times the amount of fair market compensation or royalties that should have been paid for the unauthorized transfers, plus punitive damages according to proof;

    c. Pre-judgment interest and post-judgment interest;

d. Costs and reasonable attorney's fees pursuant to Georgia RICO;

e. Divesture of gains;

f. That preliminary and permanent injunctions be entered against iHeartMedia and its employees and agents restraining it from further violations/infringement of class members' rights; and

g. Such other relief as is necessary and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

This 29th day of September, 2015.

        LEE DURHAM, LLC

        By: /s/ Joseph P. Durham, Jr.
           **Joseph P. Durham, Jr.**
           Lee Durham, LLC
           State Bar No.: 235524
           jdurham@leedurham.com
           Post Office Box 607
           Albany, GA  31702-0607
           (229) 431-3036
           (229) 431-2249 – Fax

        **Howard Foster** (pro hac vice pending)
        Foster, PC
        hfoster@fosterpc.com
        150 North Wacker Drive
        Suite 2150
        Chicago, IL  60606
        (312) 726-1600 (P)
        (866) 470-5738 (F)

**Tony Abner** (pro hac vice pending)
Abner & Fullerton, LLP
tony.abner@gmail.com
32565 Golden Lantern Boulevard
Suite 216
Dana Point, CA  92945
(323) 839-3291(P)
(323) 656-7155(F)

**Justin Sobodash** (pro hac vice pending)
Law Office of Justin Sobodash
justin@sobodashlaw.com
8335 West Sunset Boulevard
Suite 302
West Hollywood, CA  90069
(323) 337-9010(P)
(323) 656-7155 (F)

*Attorneys for Plaintiffs*