IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| ARTHUR SHERIDAN, an individual, and, BARBARA SHERIDAN, an individual, individually and on behalf of all those similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>iHEARTMEDIA, INC., a Delaware corporation,<br><br>        Defendant. | CASE NO.: 1:15-CV-00160 (LJA) |

## ORDER

Before the Court is Defendant iHEARTMEDIA, INC.'s ("Defendant") Motion to Dismiss. (Doc. 15). For the reasons set forth below, Defendant's Motion to Dismiss Plaintiffs' Complaint, (Doc. 15), is **STAYED** pending the issuance of an opinion by the Supreme Court of Georgia.

## BACKGROUND[1]

In the 1950s and 1960s, Plaintiff Arthur Sheridan ("Arthur") owned and operated several recording companies specializing in recording and selling doo-wop, jazz, and rhythm and blues music. (Doc. 1 ¶ 19). Arthur owns several master recordings of this music made prior to 1972, including jazz, blues, and doo-wop songs. (*Id.* ¶ 20). Plaintiff Barbara Sheridan owns the pre-1972 master sound recording of "Golden Teardrops" by The Flamingos. (*Id.* ¶ 21). Plaintiffs also own the intellectual property and contract rights associated with the recordings. (*Id.* ¶ 22).

Operating under the name iHeartRadio, Defendant offers internet radio services in the form of customizable music "stations" that stream music to users on the internet. (*Id.* ¶ 15).

---

[1] On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts all facts alleged in Plaintiffs' Complaint, (Doc. 1), as true. *See* Fed. R. Civ. P. 12 (b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).

Defendant also owns hundreds of traditional ("terrestrial," or AM and FM) radio stations and streams their broadcasts online. (*Id.*) Defendant offers its internet radio services to the public on a non-subscription basis. (*Id.*) Users can access Defendant's internet radio services on a variety of internet platforms including computers, digital media devices, tablets, video game consoles, and smartphones. (*Id.*) Streaming music (or other programming) over the internet entails the transfer of a series of digital "packets" to the temporary random access memory of the listener's computer or other internet-connected device. (*Id.* ¶ 16).

Defendant regularly streams one or more of Plaintiffs' pre-1972 recordings to Georgia listeners/customers. (*Id.* ¶ 5). Defendant, however, has no license, authority, or consent from Plaintiffs or putative class members to use and transfer the sounds of the pre-1972 master recordings. (*Id.* ¶ 18). Nor has Defendant compensated Plaintiff or putative class members for the use and transfer of their pre-1972 master recordings. (*Id.* ¶ 34).

On September 29, 2015, Plaintiffs initiated this putative class action by filing a Complaint against Defendant alleging one count of violations of O.C.G.A. 16-8-60, which is made "racketeering activity" under O.C.G.A. § 16-14-1 *et seq.* (the "Georgia Racketeer Influenced and Corrupt organizations Act"). (Doc. 1). On November 24, 2015, Defendant filed a Motion to Dismiss Plaintiff's Complaint under Federal Rules of Civil Procedure 12(b)(6). (Doc. 15). On January 6, 2016, Plaintiffs filed their Response. (Doc. 16). On January 27, 2016, Defendant filed its Reply. (Doc. 17). Accordingly, Defendant's Motion to Dismiss Plaintiff's Complaint, (Doc. 15), is now ripe for review. *See* M.D. Ga. L.R. 7.3.1(a).

## DISCUSSION

Generally, federal law governs sound recordings made after 1972, while sound recordings made before 1972 are generally governed by state law. *See* 17 U.S.C. § 301(a) (preempting state law rights "that are equivalent to" those arising under federal copyright law); *id.* § 301(c) (carving out from that express preemption clause "sound recordings fixed before February 15, 1972"). In 1972, Congress granted federal copyright protection to sound recordings prospectively, but left the states free to continue regulating sound recordings made before the federal law went into effect. *See* Sound Recording Act of 1971, Pub. L. No. 92-140, 85 Stat. 391. In Georgia, O.C.G.A. §16-8-60 confers upon owners of master sound recordings the sole right to transfer the sounds of those master recordings. *See* O.C.G.A. § 16-8-60. Title 16, Chapter 8, Article 3 of the Georgia Code is entitled, "Criminal Reproduction and Sale of Recorded

Material." Section 16-8-60 is one of three sections under Article 3. *See* O.C.G.A. §§ 16-8-60 (recorded material generally); 16-8-61 (video movies), 16-8-62 (film piracy). O.C.G.A. 16-8-60 provides:

> (a) It is unlawful for any person, firm, partnership, corporation, or association knowingly to:
> (1) Transfer or cause to be transferred any sounds or visual images recorded on a phonograph record, disc, wire, tape, videotape, film, or other article on which sounds or visual images are recorded onto any other phonograph record, disc, wire, tape, videotape, film, or article without the consent of the person who owns the master phonograph record, master disc, master tape, master videotape, master film, or other device or article from which the sounds or visual images are derived.

O.C.G.A. § 16-8-60(a)(1).

Plaintiffs allege that "Georgia Code § 16-8-60 vests with Plaintiffs the exclusive rights to transfer their master pre-1972 records." (Doc. 1 ¶ 27). Plaintiffs also allege that Defendant "operates an internet radio service . . . that streams music and other programming to its subscribers via the internet, which is listened to on computers, smart phones and other internet-connected devices." (Doc. 1 ¶ 2). Consequently, Plaintiffs claim that Defendant "has repeatedly violated [O.C.G.A. § 16-8-60] by streaming [] pre-1972 recordings to its Georgia listeners/customers" without permission of Plaintiffs and others who own these pre-1972 master records. (Doc. 1 ¶ 29, 30-45).

The statute includes an exemption provision that states that § 16-8-60 "shall not apply to any person who transfers or causes to be transferred any such sounds or visual images [i]ntended for or in connection with radio or television broadcast transmission or related uses." O.C.G.A. § 16-8-60(c)(1). Defendant moves to dismiss Plaintiffs' Complaint on the basis that the exemption for "radio broadcast transmission" precludes liability for Defendant's internet radio service. (Docs. 15-1 at 8-13; 17 at 2-8). Plaintiffs assert that "radio broadcast transmission" is a term of art and the court should examine federal copyright law to construe the term. (Doc. 16 at 5).

Under Georgia law, "[i]n all interpretations of statutes, the ordinary signification shall be applied to all words, except words of art or words connected with a particular trade or subject matter, which shall have the signification attached to them by experts in such trade or with reference to such subject matter." O.C.G.A. § 1-3-1(b). Thus, the questions before the Court are:

> (1) Whether the term "radio broadcast transmission" are "words of art or words

connected with a particular trade or subject matter, which shall have the signification attached to them by experts in such trade or with reference to such subject matter?"

(2) If the term "radio broadcast transmission" is a term of art, what is its meaning under O.C.G.A. § 16-8-60(c)(1)? and, in the alternative,

(3) If the term "radio broadcast transmission" is not a term of art, what is the "ordinary signification" under Georgia law.

Defendants further argue that even if the phrase "radio broadcast transmission" is not properly construed to encompass Defendant's internet radio service, Plaintiffs' claim is still barred under the "or related uses" clause of the statute's exemption provision. Plaintiffs argue that Defendant's internet radio service does not qualify as an "or related use" because "'related' modifies the phrases 'intended for' and 'in connection with' that concern the process of broadcast transmission." (Doc. 16 at 10). Accordingly, there is also a question as to whether internet radio services are covered by the "or related use" clause of the exemption.

The Eleventh Circuit recently certified a case dealing with the same general subject matter to the Supreme Court of Florida. In *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 827 F.3d 1016 (11th Cir. 2016), in which former members of a musical group brought an action against a satellite and internet radio provider, alleging common law copyright infringement, common law misappropriation/unfair competition, common law conversion, and civil theft under Florida law. In certifying the question to the Supreme Court of Florida, the Eleventh Circuit Court of Appeals stated: "Because Florida law is not clear on these matters, we certify to the Supreme Court of Florida the questions of whether Florida common law copyright extends to pre–1972 sound recordings and, if so, whether it includes an exclusive right of public performance and/or an exclusive right of reproduction." *Id.* at 1024. While the exact questions are not the same, the question of how internet radio services may or may not use pre-1972 sound recordings under various state laws is one which the Court of Appeals deemed properly should be decided by the highest court in the respective state.

Both parties agree that no Georgia court has squarely addressed the issue of whether the radio broadcast transmission exemption in O.C.G.A. § 16-8-60 applies to internet radio services. A federal court has discretion whether or not to certify a question of state law to a state's highest court. *See generally Lehman Bros. v. Schein*, 416 U.S. 386, 390–91, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974) (discussing ability of federal courts to certify questions of state law

4

questions to a state's Supreme Court). Georgia law provides that a district court of the United State may certify a question regarding state law to its Supreme Court. O.C.G.A. § 15–2–9(a). "Where there is any doubt as to the application of state law ... a federal court should certify the question to the state supreme court to avoid making unnecessary *Erie* guesses and to offer the state court the opportunity to interpret or change existing law." *See Gulfstream Park Racing Ass'n v. Tampa Bay Downs, Inc.*, 399 F.3d 1276, 1279 (11th Cir.2005) (internal citations omitted).

Since there is no clear, controlling precedent from the Supreme Court of Georgia addressing the legal issue in this case, the Court certifies the following question to the Supreme Court of Georgia:

> WHETHER THE EXEMPTION TO O.C.G.A. §16-8-60, SET FORTH IN § 16-8-60(C)(1), APPLIES SUCH THAT INTERNET RADIO SERVICES ARE EXEMPT FROM APPLICATION OF § 16-8-60?

Accordingly, while neither party has moved that this question be certified to the Georgia Supreme Court, the Court *sua sponte* certifies the foregoing question to the Georgia Supreme Court.

## **CONCLUSION**

Accordingly, based on the findings stated herein, the entire record, along with the briefs of the parties, shall be transmitted to the Supreme Court of Georgia. This case is otherwise **STAYED**. Defendant's Motion to Dismiss is **STAYED**. The Court further orders the captioned case be administratively closed and reopened upon the issuance of an opinion by the Supreme Court of Georgia.

**SO ORDERED**, this   30th   day of September, 2016.

    /s/ Leslie J. Abrams
**LESLIE J. ABRAMS, JUDGE**
**UNITED STATES DISTRICT COURT**